Samuel S. SMITH, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 61 C 1454.

United States District Court
N. D. Illinois, E. D.
June 26, 1962.

**4**

Karlin, Coe & Solomon, Chicago, Ill., for plaintiff.

James P. O'Brien, U. S. Atty., Chicago, Ill., for defendant.

WILL, District Judge.

This case is here on appeal from the decision of the Appeals Council of the Social Security Administration that plaintiff is not entitled to establish a period of disability, as defined in section 216(i) (2) of the Act, 42 U.S.C.A. § 416(i) (2), or to the disability insurance benefits for which he applied. Both parties have moved for summary judgment. Under the provisions of 42 U.S.C.A. § 405(g), the District Court is vested with "* * * power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." The foregoing section also provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." For present purposes the decision of the Appeals Council is that of the Secretary.

The following facts appear from the pleadings and record before the Court. Plaintiff suffered an acute coronary oc-clusion on December 5, 1958. On May 8, 1959, he filed applications to establish a period of disability and for disability insurance benefits. These applications were first denied by the Illinois Division of Vocational Rehabilitation, and, on request for reconsideration, again denied by the Bureau of Old-Age and Survivors Insurance. Plaintiff subsequently was granted a hearing before a hearing examiner of the Social Security Administration at which his case was considered on a *de novo* basis. After taking plaintiff's testimony and receiving exhibits, including various medical reports, the hearing examiner issued a written opinion in which he decided in plaintiff's favor, finding that he was entitled to both the period of disability and the disability insurance benefits. The Appeals Council thereafter reviewed this decision on its own motion, and, after receiving additional evidence, reversed the hearing examiner. It is from this decision that section 405(g) contemplates an appeal may be taken to the appropriate District Court.

In its written opinion the Appeals Council noted that the additional evidence before it took the form of (a) two medical reports dated after the hearing examiner's decision, and (b) a statement by plaintiff taking issue with much of the substance of one of these reports—that of Dr. John L. Ward. It is apparent from the opinion that in reaching the conclusion that plaintiff was not suffering from such an impairment as would preclude his engaging in substantial gainful employment, the Council placed great weight on the report of Dr. Ward, who performed a series of consultative examinations on plaintiff in February, 1961. This report, the details of which were set out at length in the Council's decision, concluded that plaintiff "* * * shows physical and electrocardiographic evidence of good recovery." In summarizing the report, the opinion also stated that it was "* * Dr. Ward's impression that the claimant was overanxious about himself, possibly dating before his infarction. Dr. Ward

stated that the claimant's reaction to his heart attack had not included psychological orientation to aim for or enjoy maximal physical attainments." Plaintiff, in a letter to the Appeals Council responding to Dr. Ward's report, took strong exception to its conclusion both as to his physical condition and his "psychological orientation" to it.

The opinion further set forth that prior to his heart attack plaintiff was extremely successful in the insurance brokerage business, earning from $20,000 to $40,000 a year; that the medical evidence showed that as late as February, 1961, his cardiac reserve was such that he could engage in light to moderate activity without any significant impairment to his health, and, finally, that his reluctance to engage in substantial gainful activity could not be the basis for a favorable decision, the test of disability being " * * * an impairment of such severity as to make him unable to do any type of substantial gainful activity." After broadly canvassing the employment areas which it felt were open to plaintiff, the opinion reiterated that "the Act requires as a prerequisite to entitlement an inability to engage in *any* substantial gainful activity."

It has been held in several recent decisions that the language "any substantial gainful activity" must be interpreted and applied in light of the particular circumstances of the party claiming a period of disability. The proper guidelines were set out in Ferran v. Flemming, 5 Cir., 1960, 293 F.2d 568, 571, as follows:

"The end sought to be achieved should be that of determining a claimant's actual ability to engage in substantial gainful employment considering the experience he has in various lines of work, his education, his training and the actual availability of employment for a person of his age and capabilities. If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute. 'Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available * * *.' Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916, at page 921."

While it is true that the Appeals Council did not in fact apply as broad a standard of gainful employment as it enunciated and that its main concern was with the plaintiff's alleged reluctance to engage in activity within the general area of his prior experience, the factors which it did take into account do not meet the requirements laid out in the Ferran case, supra. The Appeals Council opinion fails to indicate what particular positions in the insurance or academic field were even theoretically open to plaintiff, let alone whether they were actually available and had been filled by persons suffering from impairments similar to plaintiff's. Nor was there any showing upon what concrete facts the Council based its assumption that such positions existed. Further, there was no evidence of whether these positions, if they did exist and were actually available, were within the general vicinity of plaintiff's home; Blanscet v. Ribicoff, D.C.W.D.Ark.1962, 201 F.Supp. 257. Knowledge of these factors is necessary in order that a fair and intelligent disposition of this cause can be made. In this connection, the Court of Appeals for the Second Circuit in Pollack v. Ribicoff, 2 Cir., 1962, 300 F.2d 674, 677–678, stated:

" * * * The Examiner's suggestion that Mrs. Pollak might be able to engage in language teaching fails under the principle, stated in Kerner v. Flemming, that 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' * * * Mrs. Pollak lacks the academic qualifications and licenses necessary for teaching in a school, even if her health would permit her to do this on a part-time basis, which is doubtful. The only teaching possibility that was in any way open

would be giving private lessons in English to German-speaking persons willing to come to her room in Flushing when she was physically able to teach them; there was no evidence that any such possibility was more than theoretical. Although the Examiner referred generally to 'other light sedentary work,' the record contains no suggestion what this might be; the case thus differs from Graham v. Ribicoff, supra, where the Appeals Council had taken notice of government studies showing that many types of jobs were filled by persons having the same disability suffered by applicant."

The Appeals Council made much of what it deemed a "lack of motivation" on plaintiff's part in seeking a return to employment. It reached this conclusion by conjecturing that plaintiff's prior financial success made him unwilling to accept a new position which would probably not be as remunerative. Yet it is equally permissible to conjecture, as plaintiff's counsel urges in his brief, that the apparent "lack of motivation" is related to the claimant's psychological orientation to his heart attack. In any case, it is certainly relevant to inquire whether plaintiff, having suffered a heart attack, is psychologically prepared to return to work—whatever the state of his physical recovery may be; see Zierler v. Ribicoff, D.C.E.D.Pa.1961, 198 F.Supp. 806. The only evidence in the record as to plaintiff's psychological condition is Dr. Ward's observations with regard to the patient's overanxiety about himself. These observations, which were volunteered at the end of a medical report on his physical condition, though enlightening, are not adequate to permit decision on a matter which the Court considers relevant in determining whether plaintiff is entitled to the benefits he seeks. They do, however, suggest that a psychological examination of plaintiff by an impartial and qualified examiner is in order.

In light of the foregoing, the motions of plaintiff and defendant for summary judgment will be severally denied. The decision of the Secretary is reversed and the cause remanded to the Appeals Council of the Social Security Administration for the taking of additional evidence on the factors relevant to employment opportunities as outlined above, plaintiff's psychological orientation to his heart attack, and any other matters which may have become relevant since the Appeals Council's prior consideration of the case.

An order consistent with the above will be entered.