**Joseph J. DOMANN, Plaintiff,**

**v.**

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ. No. 14177-4.**

United States District Court
W. D. Missouri, W. D.

May 8, 1963.

Linde, Thomson, VanDyke, Fairchild & Langworthy, by Rodger J. Walsh, Kansas City, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., by Clifford M. Spottsville, Asst. U. S. Atty., for defendant.

BECKER, District Judge.

This action to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff herein a period of disability under Title 42 U.S. C.A. § 416(i) and disability insurance benefits under Title 42 U.S.C.A. § 423, is submitted for decision pursuant to the provisions of the Social Security Act as amended, Title 42 U.S.C.A. § 405(g).

On October 6, 1961, plaintiff filed application to establish a period of disability, and for disability insurance benefits. Plaintiff alleged that he first became unable to work on January 2, 1961, at age 49, because of "diabetes—nervous breakdown." The plaintiff's wage record establishes that the plaintiff met the statutory earnings requirements during the

effective period of the application, and continued to meet such requirements through March 31, 1963. The Bureau of Old-Age and Survivors Insurance, Department of Health, Education and Welfare, initially determined that the plaintiff did not meet the disability requirements of the Social Security Act prescribed in Title 42 U.S.C.A. § 423(c) (2). Therefore the plaintiff's application was disallowed, and the plaintiff was notified of the disallowance by letter dated February 20, 1962. Upon the plaintiff's request for reconsideration, the Reconsideration Branch on March 8, 1962, affirmed the initial determination. The plaintiff then filed a request for hearing by an Examiner of the Social Security Administration. After a hearing on June 27, 1962, in a decision dated July 23, 1962, the Examiner found that the plaintiff was not disabled within the meaning of the Act and affirmed the disallowance of the application. A request for review of the Examiner's decision was denied by the Appeals Council on October 15, 1962. Thereafter the plaintiff filed the complaint in this action.

## PLAINTIFF'S PRIOR HISTORY

The following facts are not in dispute. Plaintiff, now 52, has had no more than a high school education. He presently resides in Wien, Missouri, a town of some 35 or 40 people. The nearest town of size is Salisbury, Missouri, 20 miles distant, with a population of approximately 1500. He has seven children. Five children and a grandson live in plaintiff's home.

Plaintiff's early years were spent on his parents' farm. From January, 1937, until March, 1940, the plaintiff worked as a chauffeur in Kansas City, Kansas. Starting in March, 1940, the plaintiff farmed an 80 acre tract in West Line, Missouri, in partnership with one Reed, the owner. Plaintiff quit this occupation because he contracted undulant fever, which required hospitalization of 10 days to 2 weeks, and a period of convalescence of approximately 3 months. From March, 1941, through May, 1942, the plaintiff worked as a route salesman for Manor Bakeries in Kansas City, Missouri. Plaintiff quit this job for a better paying job as a brakeman for the Missouri Pacific Railroad. He held this job from May, 1942, through May, 1946, when he quit to buy a general store with attached living quarters in Wien, Missouri. He operated this store from May, 1946, to March, 1955.

In addition to running the general store, plaintiff operated several trucks hauling poultry, cattle and hogs to various markets in Missouri, and ran an egg route. Further, from May 5, 1953, through June, 1954, with the exception of February and March, 1954, the plaintiff worked as a laborer on the Burlington Railroad; from September, 1954, through October, 1954, he worked as a laborer for the Santa Fe Railroad.

In October of 1954 the plaintiff entered the Marceline Hospital, Marceline, Missouri, where it was discovered that he had diabetes. From September, 1955, through March, 1956, plaintiff drove a school bus and worked as a bartender in Salisbury, Missouri. He was forced to give up bartending because of varicose veins which ultimately necessitated an operation and also because of a nervous condition characterized by an inability to talk to people.

In June of 1956 the plaintiff was employed as a salesman for a printer in Marceline, Missouri. He was assigned an Ohio territory and went to Ohio but quit before he made any sales. He stated he quit because he was too far from home for the money he was making, because his legs hurt, because he was nervous, and because he became ill with "practically the same thing as pneumonia." From June, 1956, through August 7, 1956, plaintiff campaigned unsuccessfully for the office of Treasurer of Chariton County, Missouri. In August and September, 1956, plaintiff again returned to the bartending job in Salisbury, Missouri, but was unable to carry out this employment because of the nervous condition. Plaintiff was hospitalized at Marceline, Missouri, from September 3, 1956, until September 19, 1956,

for his nervous condition. On September 19, 1956, he was transferred to the State Hospital in Fulton, Missouri, because he had become unmanageable. He was released November 30, 1956.

On January 23, 1957, plaintiff applied for a job with Locomotive Finishing Material Company in Atchison, Kansas, but was turned down because of his diabetes. Plaintiff returned to the State Hospital at Fulton, Missouri, from February 28, 1957, until March 18, 1957. From March 18, 1957, through January 3, 1958, plaintiff helped two farmers in the Wien area build hog and chicken houses and do other odd jobs on their farms. In May of 1957 he took a Civil Service Examination at Moberly, Missouri. As a result of this examination the plaintiff was offered a job doing custodial work but because the salary was about $150 to $170 per month and because he would be required to work away from home, he did not take the job.

From May, 1958, through July, 1958, the claimant worked on a pipeline job at Salisbury, Missouri, but quit because he could not take the heat and heavy work. From July, 1958, through January, 1959, the plaintiff was manager of a dry goods store in Glasgow, Missouri. He quit this employment because of his diabetes and nervous difficulties. From March, 1959, to July, 1959, the plaintiff again did odd jobs, such as cleaning barns, for farmers in the Wien, Missouri, area. From July 28, 1959, to September 29, 1959, he was returned to the State Hospital at Fulton, Missouri. From September, 1959, through May, 1960, the plaintiff worked as a helper in the kitchen and dining room of Westminster College in Fulton, Missouri, while returning to the State Hospital at nights for care and treatment. From September, 1960, through January, 1961, he returned to Westminster College and worked as a helper. From April, 1961, through August, 1961, he was employed as a life insurance salesman in Springfield, Missouri, but made no sales. From July 12, 1961, through August 23, 1961, plaintiff was employed as a salesman for Capper's Publications but was again unable to make any sales.

Since that time the plaintiff and his family have "fixed up" that portion of the home in Wien, Missouri, that formerly housed the general store and have held dances therein on Saturday nights, clearing a profit of about $75–$100 a month. Plaintiff's wife and family do most of the work involved in this operation.

TESTIMONY BEFORE HEARING
EXAMINER

As indicated previously plaintiff's application to establish a period of disability and for insurance benefits alleged that he was unable to work because of diabetes and a nervous breakdown. The plaintiff testified that at the time of hearing he did minor repair work around the home and dance hall, "did a few odds and ends" at the Saturday night dances and watched the children. Plaintiff stated: "I * * * rest just whenever I feel like it and eat whenever I want to and go to bed when I take a notion." Plaintiff testified that at times he had bad insulin reactions, and that he was continuously nervous.

Plaintiff's wife testified that plaintiff had reactions all the time; that if he goes out into the sun he overheats; that when it is cold "he's froze or he's got pneumonia right away"; that she could not take a job because she could not leave plaintiff at home with the children; that

"He gets jumpy, and he'll jump up at the table and maybe throw his coffee out and beat the table with his hands and run out in the other room and just scare the kids to death, and he hollers. He can't control himself. It's just a reaction."

A neighbor who had known the plaintiff for 20 years testified that the plaintiff was " * * * a victim of circumstances, both physical and some mental strain."

One of the farmers for whom the plaintiff had done odd jobs, a Mr. Weimer, when asked whether or not the plaintiff's work was fairly satisfactory, testified:

"Well, his job was good to me for that—For a few days, but I could see

when the few days were up that he was shot. The last time he worked I—I thought he done an extra good job, but I sure wouldn't wanted to hire him again because I could see what happened, cause he was sick after that again. I wouldn't want to hire him and be the cause of him getting sick."

He further testified:

"Well, I would say that I just could see that he couldn't go out and hold a job at all. I wouldn't wanta hire him on a steady job because he couldn't do it. He could work maybe a day like he did for me a couple days at a time, but I could see he wasn't—But that was the limit there because if he hadn't done anything for a while he was rested up, and then he could do it, and he has been willing. He's willing to work. He knows how to work. He's not like some guys who don't know how to work. He knows how, but he can't keep up."

The other farmer for whom the plaintiff had done odd jobs, a Mr. Clark, testified:

"He worked for me one year, and on the hog house he done very well for the pay he was getting, and on the chicken house towards the last, it was cold weather and there he tuckered in. He just didn't come back anymore. He wasn't able to work, but while he was working, sometimes I'd rather watch and just look on, and once in a—He didn't know I was looking at him; he had both hands—Driving a nail with both hands because he didn't have enough strength in the one hand to hold a hammer, I guess."

### MEDICAL EVIDENCE

Dr. Robert W. Smith, the claimant's family physician, in a report dated September 16, 1951, diagnosed plaintiff's condition as diabetes mellitus, uncontrolled, and psychoneurosis with schizoid tendencies. He found that the "patient has repeated episodes of persecution, delusions and suicidal tendencies." Under the heading "Progress, specific restrictions," Dr. Smith stated "patient is unable to pursue a gainful occupation." Under "Remarks" Dr. Smith stated:

"This patient is a 'brittle' uncontrolled diabetic with repeated episodes of Schizoid tendencies—he is so unstable emotionally & mentally that he is unable to hold a job of any kind for more than two or three days at a time."

A report from the State Hospital at Fulton, Missouri, described the physical findings as "Vague delusional ideas concerning his wife's treatment of him and her unfaithfulness to him. Very vague sensorial defects." Under the heading "Diagnosis or Reaction Type" the report stated "Schizophrenic reaction, chronic paranoid type, Diabetes mellitus."

Dr. E. C. Chiasson, a psychiatrist, examined the plaintiff on December 20, 1961, at the request of the O.A.S.I. Disability Determinations Counselor. Dr. Chiasson's report stated:

"Mental examination reveals a very tense, superficially cooperative individual who ofttimes exhibited traits of restlessness and irritability, followed by periods of mild depression, noted particularly when discussing his inability to assume responsibility for his large family. It is evident that his past history of delusions of a paranoid nature has become increasingly alarming to him and there is a persistent fear that these may recur at any time. The patient has sufficient insight to realize this would require further hospitalization. He seems to accept this as inevitable. However, it should be noted that in cases of this type, during the lucid phases, they are able to objectify problems more adequately than during an acute phase. Retention and recall were normal. Grasp of new information was fair."

"Psychometrics: M.M.P.I. indicates that patient is depressed, and hysterically inclined. There is sup-

pression of normal interests. Motivation is relatively poor. S.I. was normal * * *.

"DIAGNOSTIC IMPRESSION: The patient appears to be a chronic paranoid schizophrenic in early deterioration in a remissive phase.

* * * * * *

"RECOMMENDATIONS: In view of the above findings the examiner is of the opinion that the patient should have a 100% disability rating. It is questionable if he will be able to maintain any managerial capacity of the dance hall he is supposedly operating. Undoubtedly he should be encouraged to continue with this, or some other vocational pursuit, on a very limited basis in that he needs a job in order to maintain his sense of responsibility and respect."

Dr. Clarence Mott Pickard, M.D., a specialist in internal medicine, also examined the plaintiff at the request of the O.A.S.I. Disability Determinations Counselor. In his report dated February 2, 1962, Dr. Pickard stated the following under "Impressions":

"1. NP disease, unclassified; Description of the 'terrific fear' which he does not remember prior to his first hospitalization brings up the possibility of an acute schizophrenic break but may have only been an anxiety reaction. Records from the Fulton State Hospital should be checked to see just what his diagnosis was. At the present his NP disease is the basis for his unemployment and any awards to him should be made on the basis of this.

"2. Diabetes mellitus, controlled quite well.

"e. Pulmonary emphysema, mild, asymptomatic."

HEARING EXAMINER'S FINDINGS

The Hearing Examiner found as follows:

"It would appear from the examination by Dr. Pickard, the claim-ant's diabetic problem is well under control. Medical evidence conclusively demonstrates that the claimant's problem is not in this field but rather lies in a mental disturbance * * *.

"The question as to whether the claimant is entitled to disability insurance benefits must rest solely on whether or not the claimant has a mental impairment of long-continued and indefinite duration which prevents him from engaging in any substantial gainful activity. * * * The claimant has been diagnosed as a psychoneurotic with schizoid tendencies. He also appears to be in a period of remission at the present time and was able to work in 1960, and earn practically as much money as he ever earned before in his life. The Regulations, as previously set forth in this decision state that his reasoning and understanding must be affected so that he cannot, with his training, education, and work experience engage in any kind of substantial gainful activity.

"Any serious restriction of the claimant's ability to perform physical functions is in the mind of the claimant. The claimant has no organic condition which would prevent him from doing numerous types of physical work. *His reasoning and understanding toward life are normal. His mental impairment does not seem to impair the effectiveness and predictability of his behavior so as to be incompatible with occupational activity.* Claimant is of fair intelligence and at the hearing did not show any mental condition that had reached the stage where his insight, judgment and thought processes have been materially impaired to the extent that it would interfere with his rational judgment and ability to handle a job. With some counseling and therapy such as he received at the State Hospital in Fulton, Missouri, he was able to earn $2000 in 1960. There does not ap-

pear to be any reason why he cannot continue, with some counseling, to perform substantial gainful activity. There is also no question but what claimant's income will not be sufficient to do an adequate job of supporting his family because of its size. This condition has always existed. There is still no question but what the claimant can earn as much as he had previously. It would also appear that the claimant's mental impairment would preclude him from performing work which requires selling or close personal contact with other individuals. It is probably true that the amount of activity which he spends at the present time in operating his dance hall could not be considered substantial gainful activity since the claimant's family is doing a large share of the work in connection with this operation. However, there are certain types of work which he could be doing involving maintenance or light tasks which would not bring him into close and constant contact with other individuals which might irritate or upset him.

"In the light of the entire evidence of record and of the foregoing considerations, the Hearing Examiner finds that the claimant has not established that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of October 6, 1961, was effective. It is the decision of the Hearing Examiner that the claimant is not entitled to disability insurance benefits or to a period of disability * * *." (Emphasis added.)

## OPINION

The jurisdiction of the Court is based upon Title 42 U.S.C.A. § 405(g) which provides that:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The defendant filed an answer alleging that the findings of fact of the Examiner are supported by substantial evidence and are therefore conclusive upon this Court. Defendant submitted a full transcript of the plaintiff's claim, the hearing before the Examiner, the decision rendered thereon, and the ruling upon the appeal by the Appeals Council on October 15, 1962. The matter was submitted to the Court for determination upon said transcript.

The term "disability" is defined by the statute as:

"Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C.A. §§ 416(i) and 423(c) (2).

Section 423(c) (2) further provides that:

"An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

██ The Court is cognizant that its power in this case is a limited review of the Examiner's findings; if his findings of fact are supported by substantial evidence there can be no substitution by this Court for his judgment. Title 42 U.S.C.A. § 405(g). However, that limitation does not mean that the Court is to surrender its "conventional judicial function." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. If it is apparent that the administrative decision is based upon conclusions which were not reasonably reached, or which resulted from improper conclusions of law which are unsupported

by the evidence, the Court may and should correct thase errors. Ellerman v. Flemming (W.D.Mo.) 188 F.Supp. 521, l. c. 525, and cases cited thereat.

■ By substantial evidence is meant more than a scintilla of evidence, it is such evidence as reasonable minds would accept as adequate in support of a conclusion. Consolidated Edison Co. of New York v. N. L. R. B:, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126. In Gooding v. Willard (C.A. 2) 209 F.2d 913, l. c. 916, the Court defined "substantial evidence" as follows:

> " * * * 'substantial evidence' means more than evidence which, considered by itself alone, would be sufficiently persuasive to induce the trier of fact to give it the credence and weight essential to support findings. It must have those characteristics to such an extent that in the setting made by the entire record the trier may reasonably find in accordance with it after giving due consideration to whatever else is shown both in opposition or in accord. Judicial review has been extended by the Administrative Procedure Act to embrace adequate exploration of the record as a whole to enable the reviewing court to arrive at its own judgment in determining that."

■ The report from the State Hospital at Fulton, Missouri, the report of Dr. Robert W. Smith, M.D., the plaintiff's family physician, and the report of Dr. E. C. Chiasson, M.D., who examined the plaintiff at the request of the O.A.S.I. Disability Determinations Counselor all indicate that the plaintiff in this cause is a chronic paranoid schizophrenic. Dr. Clarence Pickard, M.D., a specialist in internal medicine who examined the plaintiff at the request of the O.A.S.I. Disability Determinations Counselor indicated plaintiff had an NP disease, unclassified, which was the basis for his unemployment, and raised the possibility of an acute schizophrenic break. In addition Dr. Smith stated that the plaintiff "is so unstable emotionally & mentally that he is unable to hold a job of any kind for more than two or three days at a time"; Dr. Chiasson stated that she was of the opinion that "the patient should have a 100% disability rating."

Nevertheless, the Examiner found that the plaintiff's reasoning and understanding toward life were normal and that his mental impairment did not seem to impair the effectiveness and predictability of his behavior so as to be incompatible with occupational activity.

The medical evidence that the plaintiff is a chronic paranoid schizophrenic was unimpeached. The expert opinions of Dr. Smith and Dr. Chiasson on the extent of the disabling effects of plaintiff's mental impairment at the time of their examinations were likewise uncontradicted except by the examiner's own observations of the plaintiff, and it was apparently on this basis that the Examiner nullified this medical testimony.

The plaintiff's extensive history of mental impairment, confinement and treatment thereof, and the nature of plaintiff's illness as evidenced by the medical evidence on file herein, makes it evident that his impairment can be expected to be of long-continued and indefinite duration. The Examiner did not question this fact in his decision.

■ The Court recognizes that the ultimate question of the extent of disability caused by physical or mental impairment is not ordinarily to be resolved by opinion evidence of medical experts. Dean v. Flemming (E.D.Ky.) 180 F. Supp. 553, l. c. 556. However expert opinions upon the extent of disability based upon examination of the plaintiff and appended to the report of such examination are admissible evidence to be considered by the fact finder along with the rest of the evidence offered by the parties. In other words the opinion of an expert witness is advisory. But as was stated in Hill v. Fleming (W.D.Pa.) 169 F.Supp. 240, l. c. 245:

> "Expert opinions on such issues are admissible evidence to be con-

sidered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on 'suspicion' and 'speculation'.[5]

"[5.] National Labor Relations Board v. Columbian [Enameling & Stamping] Co., 1939, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; National Labor Relations Board v. International Brotherhood, 8 Cir.. 1952, 196 F.2d 1, 4; National Labor Relations Board v. Amalgamated Meat Cutters, 9 Cir., 1953, 202 F.2d 671, 673. Cf. Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 98 L.Ed. 132."

This language was adopted and quoted with approval by the United States Court of Appeals for the Eighth Circuit in Kohrs v. Flemming, 272 F.2d 731, l. c. 736. See also Teeter v. Flemming (C.A. 7) 270 F.2d 871, 77 A.L.R.2d 636; Tosto v. Celebrezze (E.D.N.C.) 214 F.Supp. 798, l. c. 801.

After giving full consideration to the entire record in this case, it is my judgment that the Examiner's conclusions contrary to the unimpeached medical evidence are not supported by substantial evidence.

■ If there was any substantial gainful activity which this plaintiff was or is able to perform, the record fails to disclose it. This is not to say that the formal burden is on the Secretary to make any such specific showing since the statute puts the general burden on the claimant. But in the context of this Act and the manner in which it is necessarily administered with informality and in great volume, satisfaction of the claimant's statutory burden of proof is to be judged in a practical way. Butler v. Flemming (C.A. 5) 288 F.2d 591, l. c. 595; Kerner v. Flemming (C.A. 2) 283 F.2d 916, l. c. 921–922. Under the Social Security Act it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience, training and mental and physical capacities. It is quite enough if he offers evidence of what he has done, of his inability to do that work any longer, and, of his lack of particular experience or capability for any other type of work. If there are other kinds of work which are available and for which the claimant is suited it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently. In this case the Examiner found "There is still no question but what the claimant can earn as much as he had previously * * * there are certain types of work which he could be doing involving maintenance or light tasks which would not bring him into close and constant contact with other individuals which might irritate or upset him." This does not satisfy the defendant's burden as it is merely the Examiner's opinion, unsupported by substantial evidence on the record, that the plaintiff has a theoretical ability to engage in substantial gainful activity.

As stated by the United States Court of Appeals for the Fifth Circuit in Ferran v. Flemming, 293 F.2d 568, l. c. 571:

"The end sought to be achieved should be that of determining a claimant's actual ability to engage in substantial gainful employment considering the experience he has in various lines of work, his education, his training and the actual availability of employment for a person of his age and capabilities. If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute. 'Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. * * *'"

The Examiner fails to indicate what positions involving "maintenance or light tasks" were even theoretically open to the plaintiff, let alone whether they were actually available to, and have been filled by, persons suffering from impairments similar to plaintiff's. Nor is there any showing upon what concrete facts the Examiner based his assumption that such

positions existed. Further, there is no evidence of whether these positions, if they did exist and were actually available to persons afflicted with the plaintiff's impairments, were within the general vicinity of the plaintiff's home. Knowledge of these factors is essential to any determination that substantial gainful activity is available to a claimant. Pollak v. Ribicoff (C.A. 2) 300 F.2d 674, 677–678; Butler v. Flemming (C.A. 5) 288 F.2d 591, l. c. 595; Kerner v. Flemming (C.A. 2) 283 F.2d 916, l. c. 921–922; Smith v. Ribicoff (N.D.Ill.) 206 F. Supp. 3, l. c. 5–6; Blanscet v. Ribicoff (W.D.Ark.) 201 F.Supp. 257, l. c. 262–264; Ellerman v. Flemming (W.D.Mo.), 188 F.Supp. 521, l. c. 527; Parfenuk v. Flemming (D.Mass.) 182 F.Supp. 532, l. c. 536; Klimaszewski v. Flemming (E.D.Pa.) 176 F.Supp. 927, l. c. 932.

There was evidence that two persons who had in the past employed the plaintiff to do "maintenance or light tasks" did not consider him suited for such tasks. One of these persons, a Mr. Weimer, stated that he would not want to hire him for such work again, supra p. 256.

As previously stated, in this case there is no substantial evidence in the record to support the finding of the Examiner. The plaintiff has sustained the burden of proving disability within the meaning of the statute. There is not the slightest intimation from any medical authority that the plaintiff can or will, at any time in the foreseeable future, perform any substantial gainful activity. At best it can be said that the conclusions of the Examiner are his own findings, not predicated upon evidence, and without any concrete suggestion in what substantial gainful activity plaintiff could engage.

The applicable statute, Title 42 U.S. C.A. § 405(g) does not require a remand for further hearing or findings. The parties do not suggest that additional evidence could be presented.

For these reasons, it is

Ordered that the defendant's motion for summary judgment be, and the same is hereby, overruled. It is further

Ordered that the plaintiff's motion for summary judgment be, and the same is hereby, sustained, and the decision of the Secretary is reversed and the cause remanded to the Secretary with instructions to allow the plaintiff's claim.