**Lester G. ELLERMAN, Plaintiff,**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.**

**No. 12584.**

United States District Court. W. D. Missouri, W. D.

Oct. 24, 1960.

Walter R. James, James, McFarland & Trimble, North Kansas City, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., for defendant.

RIDGE, Chief Judge.

This action is before the Court pursuant to the provisions of Section 205(g) of the Social Security Act, as amended, (42 U.S.C.A. § 405(g)) to review the final decision of the Secretary of Health, Education and Welfare, denying plaintiff a period of disability under Section 216 (i), as amended, and disability insurance benefits under Section 223. 42 U.S.C.A. §§ 416(i), 423.

On August 22, 1957, claimant filed application to establish a period of disability insurance benefits, alleging that he first became unable to work on December 26, 1956, at age 58, because of a coronary occlusion, diabetes mellitus, and osteoarthritis. His wage record establishes that the statutory earnings requirements were met in the alleged quarter of disability and continuing through the calendar quarter ending September 30, 1958. The Bureau determined that the claimant's impairment did not constitute a "disability" within the meaning of the Social Security Act. The claimant's applications were, therefore, disallowed initially, and on reconsideration he was so notified by letters dated March 18, 1958, and July, 1958. Claimant then requested a decision by a Referee of the Social Security Administration. After a hearing, the Referee found that the claimant was not "disabled", affirming the determination of the Bureau. On review, defendant affirmed the Referee.

The facts are not in dispute. Claimant, now 62, has had no more than an Eighth Grade education. As a boy he ran his father's farm until he was 25. He then operated a filling station and a blacksmith shop, respectively, for brief periods. In 1927 he came to Kansas City, and was employed by Corn Products Company. His position there varied over a period of years; all were manual

laboring jobs, in that he worked with various machines, opening and closing valves, etc. He worked with Corn Products until his heart attack in 1956, when he was retired on the basis of an examination by the Company's physician; a Dr. Fowler, whose medical report was in evidence before the Referee, dated April 30, 1958. It contained the following comment:

"It is my opinion that Mr. Ellerman is no longer physically capable of carrying out his occupation at Corn Products Refinery or to carry out any other occupation which requires physical effort. He has had a serious heart involvement and still has anginal pains in spite of the stability of the cardiac process as described by the electrocardiologist. He should be retired from work on the basis of impaired health and should remain under medical supervision."

Since his release from the hospital in 1957, claimant has been under the medical supervision of a Dr. J. McCormick, a private physician, whose various medical reports of claimant's condition were also before the Referee. Since 1957, Dr. McCormick's diagnosis of claimant has been the same, as illustrated by a letter written by him to claimant's attorney (Ex. 24, Tr. 93), dated February 9, 1959. It reads:

"As I have stated a number of times before, Mr. Ellerman had severe damage to his heart muscles and I feel that he is completely unable for any gainful occupation. In June of this past year he had some episodes of chest pain relieved by nitroglycerine. I do not know how many episodes he has had since but I feel he should have no activities that would bring on these attacks of angina. Some of the activities that were mentioned were: fast walking, climbing stairs, raking, using a hammer or saw, losing his temper, or becoming emotionally disturbed. He has been able to drive his car and

lead a sedentary life at my insistence.

"I feel I could say with certainty that there is no firm or company in Kansas City that would hire this man because of his past history."

Also in evidence below was the medical report of Dr. John Cashman, Doctor of Internal Medicine (Ex. 17) dated June 9, 1958, who examined petitioner on behalf of OASI Disability Determinations Counselor. The following is contained therein:

"This man has many complaints, and I think he honestly feels that he is disabled; and honestly from my point of view, *I don't know why any one would hire him or what he could do.* (Emphasis added) He apparently has anginal attacks two or three times a week, though this is a little difficult to determine because of the overall pain pattern that he presents 'from the neck to the bottoms of the feet.' He had a posterior infarction. He has not had any cardiac decompensation. It is difficult to find objective evidence of osteoarthritis to support his multiple complaints. Being purely objective about it, it would appear that this man is not as disabled as his subjective symptoms would suggest. I would not feel that he would be fit for competitive labor on the open market, but feel that he would be fit for many types of various light duty."

But note the Doctor does not suggest that petitioner might or could perform such "light duty" with any degree of *regularity.*

Claimant's son testified before the Referee that he saw his father often and that "even the little puttering around the house" claimant does, he "could work no more than twenty minutes and he would have to sit down and rest." (Tr. 42) Claimant's medical evidence established he had a cardiac functional capacity of class 3, "marked limitation"—difficult or labored breathing on slight to moderate exertion. Claimant testified

that when he over-exerts himself he gets chest pains, and experiences such pain at times when "sitting" at home. His two treating doctors confirm such condition. Petitioner also testified that he has mowed his lawn (with a power mower), taken short walks, short drives, cleaned the house, washed dishes, etc., but when doing so he quits working the rest of the day if he gets a chest pain.

Upon this evidence the Referee said:

"The Referee realizes that the weight of medical authority places the claimant's impairments in the category of diseases which are of *long-lasting and indefinite duration.* The mere existence of such impairments, however, will not permit a finding that an individual is under a disability as defined in the Social Security Act. Consideration must be given to other factors, such as the individual's education, training, and work experience; and the severity of the impairment must be evaluated in terms of whether it does, in fact, prevent the individual from engaging in any substantial gainful activity. In the instant case, the evidence in its entirety clearly shows that the claimant's impairments, singly or in combination, are not of such severity as to preclude the claimant from following *substantial gainful activity such as sedentary work or light manual labor.* While the claimant does meet the requisite of having a medically determinable impairment which is expected to be of long-continued and indefinite duration, he does not meet the second requisite that there must be a present inability to engage in any substantial gainful work by reason of such impairment. The individual must be disabled not only for work of the laborious nature but also for any type of substantial gainful activity. Considering claimant's education, work experience, and present activities, along with the severity of his impairments, it would appear that he is capable of engaging in some type of substantial gainful activity." (Emphasis added.)

But, again note, the Referee does not suggest of what such "substantial gainful activity" might practically consist.

■■■ This Court is cognizant that its power in this case is a limited review of the Referee's findings:—If his findings of fact are supported by substantial evidence there can be no substitution by this Court for his judgment. 42 U.S. C.A. § 405(g). However, that limitation does not mean that the Court is to surrender its "conventional judicial function." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 466, 95 L.Ed. 456. While the statutory finality (42 U.S.C.A. § 405(g)) of the administrative findings necessarily extends to the reasonable inferences and conclusions drawn from the evidence, nevertheless if it is apparent that the administrative decision is based upon conclusions which were not reasonably reached, or which resulted from improper conclusions of law which are unsupported by the evidence, the Court may and should correct those errors. Pruitt v. Flemming, D.C. S.D.W.Va.1960, 182 F.Supp. 159; Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776.

The test for disability under the Social Security Act consists principally of two parts: (1) a determination of the extent of the physical or mental impairment; and, (2) a determination whether that impairment results in an ability to engage in any substantial gainful activity. 42 U.S.C.A. §§ 416 and 423.

After giving full consideration to the entire record, it is my judgment that the Referee's conclusions are not supported by substantial evidence. The transcript as a whole, read together with the Referee's opinion, reveals that he must have been substantially influenced in his decision, solely by the medical report of Dr. Cashman. Dr. Cashman's report, standing alone, does not constitute substantial evidence in support of the Referee's decision, *ipso facto,* in view of the other medical evidence and other facts reflected in the transcript.

The claimant in this case has been a laborer all his life. He has but an Eighth Grade education. Since 1956 he has been unable to perform other than simple household tasks, i. e. washing dishes, cleaning house, etc. When he does so, and sometimes even when inactive, he has angina pains, requiring periods of rest before they subside. Two treating doctors have told him that he should live a sedentary life under medical supervision. The only medical evidence proffered in support of the Referee's findings is the report of Dr. Cashman (based on one examination of the claimant). In that report, that Doctor states "he would be fit for many types of various light duty." Yet, in that same report, Dr. Cashman admits, "I don't know why anyone would hire him or what he could do."

■■ The defendant and the Referee in this case give stress to the adjective "any" preceding the phrase "substantial gainful activity." The Referee says (Tr., p. 11):

> "(T)hat he (petitioner) does not meet the second requisite that there must be a present inability to engage in *any* substantial gainful work by reason of (his) impairment. The individual must be disabled not only for work of a laborious nature but also for *any* type of substantial gainful activity." (Par. & emphasis added.)

This is too severe a test. Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731; Sebby v. Flemming, D.C.W.D.Ark.1960, 183 F. Supp. 450. The statute is remedial and should be construed with liberality. Congress did not intend to impose such a test, which, in effect, exacts the elimination of every possibility of gainful employment. Klimaszewski v. Flemming, D.C.E.D.Pa.1959, 176 F.Supp. 927, 931. (Opinion by Chief Judge John Biggs.)

■ It should also be remembered that the Act is concerned not with the average man of ordinary and customary abilities, but with the particular person who may claim its benefits; and the effect of the impairment upon that person with whatever abilities he has. Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 44. Therefore, the background, education, training and age of this particular applicant becomes pertinent to his undisputed physical and mental condition.

■ Concededly, the purpose of the Social Security Act is to preclude its benefits from those who can "engage in any substantial gainful activity"; and, fortifying authority is not necessary to sustain the proposition that those who can engage in "sedentary work or light manual labor" with some degree of regularity are not within the ambit of the Act.

■ However, it must be kept in mind that the word "substantial" as used in Sections 416 and 423, supra, does not modify "gainful," but rather modifies "activity". The activity in which a claimant must be able to engage must not only be "gainful" but it must also be "substantial". The determinative factor, therefore, is not how substantial the gain, but how substantial the *activity*, in which the claimant can be gainfully engaged. Dunn v. Folsom, supra. "Substantial", as used in the Act, supra, is synonymous in the sense of belonging to the real nature of "activity" which a person can perform. It connotes "activity" as being real or actual, as opposed to transitory or apparent. It contains the idea of an "activity" which may be performed with some degree of regularity—not occasionally, sporadically or infrequently. Therefore, I think "substantial gainful activity" as used in subsection 216(i) (42 U.S.C.A. § 416(i)), and subsection 223(c) (2) of the Act (42 U.S.C.A. § 423(c) (2)), is a term to be measured by a finding establishing an "activity" from which something gainful, with some degree of regularity, should be inferred; that a finding in respect to a "physical or mental impairment" which is based on evidence from which the only inference can be made or expected is that a person's "activity" may be frequently or transitorily re-

stricted, cannot be the premise for a finding of ability to "engage in any substantial gainful activity." As Chief Judge Biggs said, in Klimaszewski v. Flemming, supra [176 F.Supp. 932], "The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable." Additionally, if a person can only be conceived as being transitorily active, and that, after any "activity" he must take enforced rest until he can again become active, I agree with Dr. Cashman, "I don't know why anyone would hire him or what he could do," from the standpoint of "any substantial gainful activity."

This conclusion has further support from what is said in Adams v. Flemming, D.C.Vt.1959, 173 F.Supp. 873, 879. There, Judge Gibson, at page 879, takes note of a statement made by the Department of Health, Education and Welfare, setting forth its stand on the disability freeze provision as made before the Committee on Finance, of the United States Senate, in which it defined "substantial gainful activity" in the following terms:

"'Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.'"

Taking into consideration the limited education of this claimant, his lack of training in any field other than physical labor, it is my considered opinion that when he lost his capacity for active labor, he likewise lost his ability to engage in "any substantial gainful activity." Sebby v. Flemming, supra. It is obvious from a reading of the record that the Referee did not apply the above type meaning to the term "substantial gainful activity" in the present case.

Though brevity is desirable, I will give these reasons why this claimant has sustained the burden of proof of his disability. Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently. Parfenuk v. Flemming, D.C.Mass.1960, 182 F.Supp. 532. Here, the Referee has made no such finding, whatsoever, based on evidence. Defendant cites this Court's opinion in Atkinson v. Flemming, D.C.W.D.Mo.W.D., No. 12474, June 2, 1960, in support of the Referee's findings in the case at bar. Atkinson is not apropos to the record here. What is there said is in relation to a record establishing a claimant's failure to sustain her burden of proof. Here, petitioner amply sustained his burden. The defendant did not, because he adduced no substantial evidence which sustains the Referee's findings and conclusions.

In short, this claimant's ability to perform the simplest of tasks should not disqualify him from benefits under the Social Security Act. The capabilities of claimant, considered in relationship with the industrial complex in which he finds himself and lives, makes the conclusion inescapable, that he was disabled within the meaning of Section 416(i), of 42 U.S. C.A., on December 26, 1956, and this disability continued until the time of his application for benefits on August 22, 1957. The decision of the Referee to the contrary cannot be sustained on the instant record.

Therefore, the defendant's motion for summary judgment is denied; the deci-

sion of the Referee is reversed; and this matter is remanded to the Secretary of Health, Education and Welfare, with directions that claimant be granted a period of disability and disability benefits in accordance with the Social Security Act, as enacted by the Congress.

It Is So Ordered.