Odist JARVIS, Plaintiff-Appellant,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 14904.

United States Court of Appeals Sixth Circuit.

Feb. 4, 1963.

W. L. Steele, Ashland, Ky., for appellant.

Stanley M. Kolber, Dept. of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., Bernard T. Moynahan, U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before McALLISTER and WEICK, Circuit Judges, and BOYD, District Judge.

McALLISTER, Circuit Judge.

On May 2, 1958, at the age of 54, appellant became unable to work because of a ruptured disc, separated vertebra, and a painful hip. He subsequently filed application for disability benefits under Sections 216(i) and 223 of the Social Security Act (42 U.S.C.A. 416(i) and 42 U.S.C.A. 423). Appellant's application was denied, and his request for reconsideration was also denied. Thereafter, a hearing was held, and upon denial of the claim by the Hearing Examiner, request for review was denied, making the Hearing Examiner's decision the final declaration of the Secretary of Health, Education and Welfare. Appellant then filed his complaint in the United States District Court, which found substantial evidence to support the decision of the Secretary, and dismissed the complaint.

Is there sufficient evidence to support the Secretary's determination? This is the sole question in the case.

All of the doctors examining appellant agreed that he was suffering from "intervertebral disc damage" between L5 and S1 zone. Dr. Harry J. Stone submitted three reports concerning appellant, and all of these reports were to the effect that appellant was unable to work because he was suffering from a progressive degenerative spondylo-arthrosis. Dr. Stone, in his second report of January 20, 1959, further stated that appellant was suffering from the same degenerative disease, which was accompanied by severe back pain, nausea, vomiting, and nervousness, and stated that in his opinion appellant was 100% disabled. Dr. Stone, on September 12, 1959, in a further report, repeated his diagnosis, declaring that appellant was unable to work due to the progressive degenerative disease.

Dr. R. G. Culley examined appellant first in 1943 and periodically thereafter until 1958. On February 20, 1959, he found nervous, sluggish reflexes, pain on pressure, intervertebral disc damage, spondylo-arthrosis of the second, third and fifth lumbar bodies, muscle spasm, and hypertrophic osteo-arthritis of the right zygapophyseal joints.

Dr. L. D. Urban examined appellant at the request of Dr. Culley on February 7, 1959. His report is as follows:

"Examination of this lumbar spine and upper pelvis shows a loss of the anterior lumbar curve.

"The third lumbar body shows a large hyperostosis formation at the anterior articulating disk margin. To a lesser degree this is present in the second lumbar body at the inferior anterior aspect.

"There is a minimal amount of hyperostosis formation at the fourth lumbar body both at the superior and inferior aspects of the disk margins.

"The intervertebral disk space between the fifth lumbar body and the first sacral segment is markedly narrowed and shows osteo-condensation bone changes at each respective disk margin.

"Oblique studies shows some irregularity between the lumbo-sacral facet on the right side and the facet between the fourth and the fifth on this right side.

"The right and left sacro-iliac joints are not remarkable.

"*IMPRESSION:* This examination of the lumbar spine and upper pelvis shows changes in the lumbo-sacral joint space indicating a marked narrowing usually representative of intervertebral disk degeneration.

"The changes observed in the third lumbar body at the anterior aspect is usually produced by an old intrusion of the nucleous pulposous herniating into the margin of this structure.

"There is a *minimal amount* of degenerative spondylo-arthrosis of the second, third and fifth lumbar bodies. There is also a true hypertrophic osteo-arthritis of the right zygapophyseal joints. The loss of the anterior lumbar curve is usually attributable to reflex muscle spasm."

Appellant testified that Dr. Stone had stated that, in his opinion, surgery would not help the degenerative disease.

On June 16, 1959, Dr. William C. Roland examined appellant for the Bureau of Rehabilitation Services, in a Social Security Disability examination. His report, upon which the government relies, is as follows:

"Mr. Jarvis related that he has had trouble with his back for twelve to fourteen years following an injury at Armco lifting shell stock during the manufacture of shell cases, during or immediately after World War II. He was off work eleven months, and was in bed about six months during this attack with 'lumbago.' He has been treated by his family doctor, Doctor H. J. Stone, principally, and has also been examined by Doctor R. G. Cully, has had recent x-rays by Doctor L. D. Urban, and has been seen from time to time by Doctor W. H. Rice, the Armco plant physician. He quit work in 1958, under a physical retirement plan. He states he was never completely disabled between 1945 and 1958, but 'had to watch myself.'

"At the present time, he complains of: (1) Back pain, which lasted from its original onset to the present date. (2) Leg pain, extending down the leg with onset in 1958. (3) Weakness of the left leg. (4) Limping on the left leg when in pain. (5) Numbness, tingling, pins and needles, or paresthesias, in the left leg. (6) Coldness of the left leg and this, he says, 'goes to sleep' and 'becomes dead.' (7) Pain in the left low back and leg when sitting or standing for prolonged periods, particularly with weight on the left leg or buttock. (8) Pain on coughing or sneezing in the left lumbar region.

"*Physical Examination:* Age fifty-five, weight one hundred forty-six pounds, height five feet six inches. The point of maximum tenderness is in the left lumbar level at about the level of the fifth lumbar vertebral segment. Percussion over the lower lumbar spine causes wincing pain. There is a slight tilt to the right, forward flexion is accomplished to sixty to seventy degrees, backward bending is zero, the patient is unable to walk on his heels due to weakness of the left lower extremity. Gluteal tone is essentially normal on the left as compared with the right. Straight leg raising in the sitting position is positive bilaterally. The deep tendon reflexes show slight diminution of the left ankle jerk, and there is an L-5, S-1 zone sensory hypesthesia.

"X-ray examination shows narrowing of the lumbo-sacral jointline and moderate osteo-arthritic changes in the entire lumbar area.

"*DIAGNOSIS:* Probable herniated nucleus pulposus, lumbo-sacral joint, left.

"*EVALUATION:* In the opinion of this examiner, Mr. Jarvis is disabled for his *regular occupation.* Hospitalization is recommended for the purpose of performing lumbar myelogram and disc excision, if disc protrusion is demonstrated on the

myelogram. This, of course, depends upon the patient's being agreeable to this treatment."

The Hearing Examiner's Decision, on which the appellee Secretary's case is based, states that:

"The evidence establishes that the claimant is disabled for his regular employment in the steel mill as well as any other type of laborious work.

\* \* \*

"There can be no doubt that the claimant's ability to get about has been impaired and that he is subject to much pain and discomfort. His orthopedic impairment restricts the normal functioning as to bodily movement and there is indication that it would interfere with respect to any type of employment unless the duties involved were of a very light and sedentary nature."

 What can appellant do in the way of engaging in a substantial gainful activity? *The activity in which he must* be able to engage must not only be "gainful," but it must also be "substantial." Ellerman v. Flemming, D.C., 188 F.Supp. 521, 526. Admittedly, he can do no kind of laborious work. As the Hearing Examiner says, *appellant's ability to get about has been impaired; he is subject to much pain and discomfort; his impairment restricts the normal functioning of bodily movement;* and there is indication that it would interfere with any type of employment unless it were very light and sedentary in nature. What kind of employment could this be? The determinative factor is not how substantial the gain, but how substantial the activity, in which the claimant can be gainfully engaged. Ellerman v. Flemming, supra. The writer of this opinion cannot think of any type of substantial gainful activity in which appellant could engage. If he could wash the dishes in the home or perform any similar light duties, that would not constitute substantial gainful activity. With only a fifth-grade education, his sole experience has been farming and working in heavy

industry, and it is admitted that he cannot now engage in that kind of activity.

"Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type work; actually, not apparently. \* \* \* Here, the Referee has made no such finding, whatsoever, based on evidence." Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527.

"[The Claimant] was not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment." Butler v. Flemming, 288 F.2d 591, 595 (C.A..5).

"[The] test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one and claimant need not establish complete absence of any opportunity for substantial gainful employment and he need only establish that he has become disabled from employment in any work in which he could profitably seek employment in light of his physical and mental capacities and his education, training and experience and he need not be totally helpless or bedridden." Randall v. Flemming, D.C., 192 F.Supp. 111, 112. Unless we are to overrule the foregoing cases, including our own adjudication in Hall v. Flemming, 6 Cir., 289 F.2d 290, we must hold that appellee did not discharge the burden placed upon him, and that appellant is entitled to recover on his proofs.

The Hearing Examiner further found that "Dr. Harry J. Stone is of the opinion

that surgery will not help the condition of spondylo arthrosis. Dr. William C. Roland, an orthopedist, who examined the claimant on June 16, 1959, regards the claimant's condition to be remediable and recommended hospitalization." There is no evidence that Dr. Roland regarded the claimant's condition to be remediable. Dr. Roland did say, as shown in his report heretofore quoted, that the appellant was disabled for his regular occupation, and that hospitalization was recommended for the purpose of performing a lumbar myelogram and disc excision, if disc protrusion is demonstrated on the myelogram. This is far from saying that claimant's condition is remediable. Dr. Roland, in recommending disc excision, does not, according to his own report, know whether there is a disc protrusion. Does he say that, if there were not a disc protrusion, appellant, in his present condition, could engage in a substantial gainful activity? No. Does he say that if there were a disc protrusion, the excision of the disc would render appellant able to engage in a substantial gainful activity? No. In fact, the undisputed testimony of appellant is that Dr. Roland would not say "whether it would do me any good or do me any harm." Appellant's own physician strongly advised against an operation. What kind of surgical operation, entailing what danger to life, must an applicant undergo, at the behest of a surgeon who does not suggest the possibilities of cure or remedy?

In the light of the medical testimony setting forth the facts, which show that appellant must be totally disabled for substantial gainful activity, as well as the findings of the Hearing Examiner that appellant's ability to get about has been impaired; that he is subject to much pain and discomfort; that his impairment restricts the normal functions as to bodily movement; and that it would interfere with respect to any type of employment unless the duties involved were of a very light and sedentary nature, we arrive at the conclusion that the mere suggestion of Dr. Roland that hospitaliza-

tion is recommended for the purpose of performing lumbar myelogram and disc excision, if a disc protrusion is demonstrated in the myelogram, is not substantial evidence to support the conclusion that claimant's impairments were not of sufficient severity to preclude him from engaging in substantial gainful activity.

In accordance with the foregoing, the judgment of the district court is reversed and the case is remanded to the Secretary of Health, Education and Welfare with directions that appellant be granted a period of disability and disability benefits in accordance with the Social Security Act.