**George H. PATTERSON, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

No. 1273.

United States District Court
E. D. Kentucky.

Feb. 27, 1964.

748

William A. Watson, Middlesboro, Ky., for plaintiff.

George I. Cline, U. S. Atty., Moss Noble, Asst. U. S. Atty., for defendant.

HIRAM CHURCH FORD, Senior District Judge.

On December 5, 1960, the plaintiff, George H. Patterson, filed application to establish a period of disability and for disability insurance benefits under sections 216(i) and 223 of the Social Security Act.

In accordance with the usual procedure in such cases, a hearing was held before R. N. Sims Crownover, referred to herein as the Hearing Examiner, who denied plaintiff's claim and filed his written decision bearing date of October 22, 1962. Thereafter the decision of the Hearing Examiner was considered by the Appeals Council and review of it was denied on April 10, 1963, thus rendering the decision of the Hearing Examiner the final decision of the Secretary of Health, Education and Welfare.

This is a proceeding in the nature of a civil action filed in this Court by the plaintiff on May 3, 1963, by which the plaintiff seeks reversal of the denial of his claimed rights under the Act. This action is authorized by and pursuant to § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g).

It appears from the record that the plaintiff was born on April 5, 1912, and according to the finding of the Hearing Examiner, as stated in his decision, plaintiff reached only the fifth grade in school and had no other special training or schooling.

In the Examiner's decision it is stated that "In 1953 claimant sustained a fractured leg. His left hip was injured in 1959 and again in 1960." On April 24, 1960, in the course of his employment "he was engaged in lifting a hopper of liquid plastic weighing approximately one hundred pounds when the barrel slipped, throwing his back into a strain making him sick at his stomach. Everything turned black for a few minutes, he stated. He went home and went to bed. When he was unable to get out of bed he consulted Dr. Hunt at the Middlesboro Memorial Hospital and shortly thereafter was admitted to this hospital. He received physical therapy treatments for approximately eight months. He has worn a metal and leather back brace (a moderate Taylor brace) to the present time." He was engaged in operating a machine making plastic pipes for five years immediately before his accident of April 24, 1960.

He testified that since the date of this accident he has constantly been in great pain accompanied by headaches and dizzy spells which last three or four days at a time. His legs give away every once in a while and for three or four weeks prior to the hearing he had to walk on crutches.

The medical evidence consists of reports from numerous physicians who examined him subsequent to his injury. The Hearing Examiner summarized the reports of some of the physicians as follows:

"In a report dated July 1960, Dr. Shiflet diagnosed claimant's condition as lumbar back strain on pre-existing osteoarthritis, mild, the x-rays showing slight hypertrophic spurring of the lumbar vertebral bodies and narrowing of the L4–5 interspace. In January 1961 he stated that there was possible nerve root irritation disc and suggested that claimant be hospitalized in the care of an orthopedist and neurosurgeon for evaluation. In a report

to an insurance company on its form in November 1961, this physician diagnosed claimant's condition as low back pain and stated that he believed him to be wholly unable to engage in any kind of work from April 25, 1960 and that he does not believe the claimant will ever be able to be gainfully employed again. He was considered to be both totally and permanently disabled as of November 2, 1961.

"Dr. Flowers diagnosed claimant's condition as arthritis of the lumbar spine, fasciitis and myositis, and lumbar musculature. Although he was unable to work as of January 1961, he should improve in six months. Dr. Flowers attached an x-ray report from Dr. Charles D. Cawood, M.D., showing very mild hypertrophic arthritis changes on the anterior surfaces of lumbar 4 and 5 with no fracture and no osteolytic disease or dislocation. There was no evidence of fracture in the right shoulder girdle or the pelvis.

"In January 1961 Dr. Hunt of the Middlesboro Memorial Hospital at Middlesboro, Kentucky found osteoarthritis of the lumbar spine as did Dr. Evans the following September. Dr. Hunt also found a chronic lumbosacral strain and a possible intervertebral disc L4–5, there being a slight narrowing of the interspace according to an x-ray. There was forward bending from finger tips to knees only and lateral bending 30% of normal on both sides. There were no muscle spasms and the neurological examination was normal. He was restricted only by activities which caused pain. Claimant was advised to 'avoid extremely heavy lifting and stooping.'

"Dr. Penn found chronic degeneration, lumbosacral intervertebral disc with chronic lumbosacral strain and instability. He recommended a lumbosacral fusion stating that lumbosacral arthrodesis would be needed before claimant experiences adequate relief. This physician also prescribed a lumbosacral brace to be worn at all times while claimant was up and about. It was stated that at night he could sleep on boards.

"Dr. Ausmus found marked tenderness over the lumbar vertebrae and sacrum with pressure. Straight leg raising was positive at 15 degrees bilaterally. Deep tendon reflexes of the lower extremities were present and exaggerated. The Babinski was present. The Romberg was positive bilaterally. X-rays of the lumbar spine and pelvis showed marked narrowing of the disc spaces between L4 and 5, L5 and the sacrum. There was a minimal amount of osteoarthritis present. There was a conclusive ruptured intravertebral disc between L4 and 5, and L5 and the sacrum. His report of March 26, 1962 concluded that claimant was totally and permanently disabled in respect to seeking and holding gainful employment. His condition will not improve in time but, on the contrary, will continue to get worse."

In reference to the testimony of Dr. Patterson, the Examiner's decision quotes the doctor's findings in part as follows:

" * * * X-rays of the lumbar spine revealed moderately degenerative arthritic changes throughout its entirety, particularly at the D–10, D–11 and D–12 areas. There was marked narrowing of the intervertebral disc space between L–5 and S–1 and slight narrowing between L–4 and L–5. There were no congenital abnormalities noted in the low back. The orthopedist concluded that he doubted from the x-ray appearance and claimant's mental reaction to the injury, plus the stiffness in his back, whether claimant would ever be able to do any type of hard manual work again."

It appears from the evidence of Dr. M. Frank Turney that upon his examination of the plaintiff he showed no objective findings to account for his complaints which he felt were extremely exaggerated.

Upon his consideration of the medical evidence, the Hearing Examiner stated:

"Actually, there is, according to the preponderance of the evidence, nothing more than intermittent sciatica due to nerve root compression with a worn out lumbosacral joint."

The Examiner further stated:

"In the light of the entire evidence of record, including the testimony, the exhibits and the appearance of claimant at the hearing, the hearing examiner finds that the claimant has not established that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of December 5, 1960 was effective.

"It is, therefore, the decision of the hearing examiner that the claimant is not entitled to disability insurance benefits or to a period of disability under Sections 223(a) and 216(i) of the Social Security Act, as amended, and his application therefor is hereby denied."

The Examiner did not make findings as to what the plaintiff could actually do and what employment opportunities were available to a man who could do only what plaintiff could do. The Examiner's conclusions appear to have been based in the main upon his theories rather than upon evidential facts. The evidence in the record on behalf of plaintiff's claim is amply sufficient to make a prima facie case in his favor in respect to his total and permanent mental and physical impairments.

Under the clear rule established by the Court of Appeals of the Sixth Circuit, such general findings, as those made by the Examiner in this case, and the absence of the requisite specific findings above referred to, that the decision of the Secretary cannot be supported, has been unanimously and consistently sustained by the following authorities: Hall v. Flemming, 6 Cir., 289 F.2d 290 (1961); King v. Flemming, 6 Cir., 289 F.2d 808 (1961); Roberson v. Ribicoff, 6 Cir., 299 F.2d 761 (1962); Holbrook v. Ribicoff, 6 Cir., 305 F.2d 933 (1962); Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707 (1963); Hall v. Celebrezze, 6 Cir., 314 F.2d 686 (1963); Rice v. Celebrezze, 6 Cir., 315 F.2d 7 (1963), and Jones v. Celebrezze, 6 Cir., 321 F.2d 192 (1963).

For the reasons indicated, it is adjudged by the Court that the decision in question denying plaintiff's claim is not sustained, and the decision should be and is reversed and the case is remanded to the Secretary of Health, Education and Welfare, with directions that the plaintiff be granted a period of disability and disability insurance benefits in accordance with the Social Security Act.