Alex **MULLINS**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare, Defendant.

No. 800.

United States District Court E. D. Kentucky.

April 2, 1964.

Combs & May, Pikeville, Ky., for plaintiff.

George I. Cline, U. S. Atty., Moss Noble, Asst. U. S. Atty., for defendant.

HIRAM CHURCH FORD, Senior District Judge.

On June 6, 1961, the plaintiff Alex Mullins filed application to establish a period of disability and for disability insurance benefits under § 216(i) and § 223 of the Social Security Act, 42 U.S.C.A. § 416(i) and § 423.

The Bureau of Old Age and Survivors Insurance denied plaintiff's application and disallowed the claim on the ground that the evidence submitted by him was insufficient to prove that his impairment was of such severity as to continuously prevent him from doing some type of substantial work.

Thereafter the plaintiff requested a hearing upon his application before a Hearing Examiner of the Bureau of Hearings and Appeals, Social Security Administration, and such hearing was held by Mr. Seymour A. Emmerglick, herein referred to as Hearing Examiner, and his decision was reported November 2, 1962, again denying plaintiff's application. The plaintiff then requested a review of the decision of the Hearing Examiner by the Appeals Council, and on March 21, 1963, the Appeals Council denied his request, the result being that the decision of the Hearing Examiner became the final decision of the Secretary of Health, Education and Welfare.

This is a proceeding in the nature of a civil action filed in this Court by the plaintiff on May 1, 1963, by which the plaintiff seeks reversal of the denial of his claimed rights under the Act. This action is authorized by § 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g), as amended.

It appears from the record that the plaintiff was about 56 years of age at the time he filed his claim herein, at which time he was in an insured status which was in effect through September 1964. The plaintiff had a very meager education and did not attend school beyond the fourth grade. He was 13 years of age when he began working in the coal mines, which occupation he continued to follow as his regular employment until he sustained a serious injury to his knees while working in the mines on January 3, 1961. According to plaintiff's testimony, this accident was followed by a nervous breakdown. That he was unable to work after that date is attested by Dr. W. C. Hambley and Dr. W. F. Clarke.

According to the testimony of Dr. W. F. Clarke, of Pikeville, Kentucky, a specialist in internal medicine, reported under date of January 26, 1962, after plaintiff's accident in January of 1961, he developed pain in his weight bearing joints, and at the time of his last examination by Dr. Clarke he had tachycardia, blood pressure 180/100; left axis deviation, and clockwise rotation of the heart along the vertical axis. X-ray shows dilatation of the great vessels, and the doc-

tor's diagnosis was "(1) rheumatic heart disease, (2) psychoneurosis with cardiac somatization"; and, by reason thereof, the doctor expressed the view that the plaintiff can not do manual labor.

It appears from the undisputed testimony of the plaintiff that Dr. W. C. Hambley operated on his right arm in February or March 1960, and plaintiff said that his use of his right arm was considerably impaired thereby. Dr. Hambley was the physician to whom the plaintiff went for treatment when he had a nervous breakdown.

The Hearing Examiner summarizes the medical report of Dr. Hambley as follows:

"A medical report of Dr. W. C. Hambley, a specialist in thoracic surgery, and a Diplomate of the American Board of Surgery, states that he last examined the claimant on June 17, 1961; *that he became unable to work January 1961*; that the subjective symptoms were pain and tingling over the cutaneous nerves of the forearms and legs, stiffness of the arms and legs. The doctor found mild brawny discoloration over the median nerves of the forearm. His diagnosis was polyneuritis, cause undetermined, and his therapy was vitamins, steroids, and vasodilators with fair response. He stated that the claimant was slowly improving; but at the time of the last examination, *the claimant could not do any manual labor.*" (Emphasis added).

Dr. Francis H. Hodges, of Pikeville, Kentucky, a specialist in internal medicine, reported under date of October 1, 1961, the result of his consultative examination of the plaintiff on September 26, 1961, detailing the many ailments with which the claimant claimed to be suffering after he sustained the injuries to his knees in January 1961, and such of them as he was able to identify subjectively. Dr. Hodges concluded his report as follows:

"I am unable to come up with too much in the way of this man's problem. He appears to have some essen-

tial hypertension without marked changes in the electrocardiogram or the x-ray. His eye grounds show only early changes. The pain that he has in his shoulders and the inability to squat and perform other movements represents a myo-fibrositis without definite evidences of arthritis. There may be some changes of osteo-arthritis of the spine, but one cannot often make a decision as to whether or not this is symptom producing.

"At this time I do not think this man is totally disabled for work, but whether or not we can get him back on a job is another matter of concern, as his symptoms certainly have some anxiety coloration."

The Hearing Examiner stated his conclusions as follows:

"It does not appear that his condition as indicated by the evidence approaches the severity required by the definition of disability in the Act. * * *

"Upon a consideration of all of the evidence, the Hearing Examiner finds that the claimant has not established that he was under a disability as defined in the Act at any time for which claimant's application of June 6, 1961, was effective."

Evidence in the record shows what character of work plaintiff has done, his inability to do that kind of work any longer and his lack of particular experience for any other type of job. This seems quite enough to establish plaintiff's prima facie claim and "[i]f there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently." Rice v. Celebrezze, 6 Cir., 315 F.2d 7, 17.

Under the rule now clearly established by the Court of Appeals of this Circuit, where, as here, the plaintiff makes out a prima facie case by his proof, in the absence of the requisite specific findings above referred to, it must be held that

defendant has not discharged the burden placed upon him and the decision of the Secretary cannot be supported. Hall v. Flemming, 6 Cir., 289 F.2d 290 (1961); King v. Flemming, 6 Cir., 289 F.2d 808 (1961); Roberson v. Ribicoff, 6 Cir., 299 F.2d 761 (1962); Holbrook v. Ribicoff, 6 Cir., 305 F.2d 933 (1962); Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707 (1963); Hall v. Celebrezze, 6 Cir., 314 F.2d 686 (1963); Rice v. Celebrezze, 6 Cir., 315 F.2d 7 (1963), and Jones v. Celebrezze, 6 Cir., 321 F.2d 192 (1963).

For the reasons indicated, it is adjudged by the Court that plaintiff's claim is sustained by the proof introduced in his behalf and the decision of the Secretary denying his claim should be and is reversed; the case should be and is remanded to the Secretary of Health, Education and Welfare with directions that the plaintiff be granted a period of disability and disability insurance benefits in accordance with the Social Security Act.