Lovel E. WILLIAMS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

No. 805.

United States District Court
E. D. Kentucky.

April 24, 1964.

Alva A. Hollon, Hazard, Ky., for plaintiff.

George I. Cline, U. S. Atty., A. L. Brooks, Jr., Asst. U. S. Atty., for defendant.

HIRAM CHURCH FORD, Senior District Judge.

On July 20, 1961, the plaintiff, Lovel E. Williams, filed his application with the Social Security Administration, Department of Health, Education and Welfare, seeking disability insurance benefits and the establishment of a period of disability under the provisions of the Social Security Act.

There seems to be no dispute as to the fact that the plaintiff at all times here in question was within insurance coverage of the Social Security Act.

On September 18, 1962, a hearing was held before Mr. John W. King, Hearing Examiner, and evidence was introduced bearing upon the issue presented as to whether the plaintiff was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which was expected to result in death or to be of long continued or indefinite duration.

The decision of the Hearing Examiner, dated January 16, 1963, held that plaintiff was not entitled to disability insurance benefits or to a period of disability under the Social Security Act, as amended. This ruling of the Hearing Examiner became the final determination of the Secretary of Health, Education and Welfare. This proceeding for the review of this final determination is authorized by § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g).

For approximately 18 years prior to November 9, 1960, the plaintiff had engaged in working regularly in the coal mines of the area where he lived, mostly in loading coal. When he was a young child he sustained an injury to his right hip which resulted in permanent stiffness of the hip joint and several inches shortening of his right leg. He was able to carry on his labors as a coal miner until November 9, 1960, when he jumped from a coal truck which turned over, and ever since that time he has suffered great pain in his left hip, left leg and in his back. He claims that by reason of such pain he has since been totally unable to engage in any character of work of a substantial or gainful nature.

In his testimony given in this case on September 18, 1962, the plaintiff described his fall from the truck and injuries, sufferings and disabilities which he sustained as the result thereof as follows:

"Q. And would you tell me just how the injury occurred to you?

"A. You mean how it hurt?

"Q. Yes, you were riding on the truck and did you jump off of the truck?

"A. Yes, sir.

"Q. Do you want to explain what happened?

"A. Go through the whole thing? Explain how it hurt?

"Q. Yes, just how you were hurt.

"A. Well, the truck ran into the ditch. I jumped off. When I jumped off, it, like it paralyzed me or something for awhile in this left side.

"Q. You are pointing to the left hip.

"A. Yes.

"Q. Did you fall on your left hip? Is that where the impact was?

"A. Yes.

"Q. It struck there?

"A. Yes, and I slid down the hill. Some boys got a hold of me and helped me up the hill. They took me to the hospital and took examinations, x-rays of me and then I didn't have no broken back but the doctor reckoned me to go home and stay for two or three days. Why if I got worse why just come on back to the hospital. He recommended me to lay down on a hard board and I went back to the hospital, went back to the hospital three days after that and they gimme another check-up, just told me to stay in bed and then they made an appointment to see another doctor, a bone specialist, that was in March '61 and he said I had a ruptured disc, fractured pelvis, recommend me to stay in the hospital about ten or twelve days with a twenty pound traction weight. Looks like I got worse, instead of helping me, it made me worse.

"Q. Tell me a little more about how it made you worse.

"A. I had cramps goin' up and down my left hip into my foot. I can't stand on my foot very long. It hurts and then through in my pelvis, I can't stand long, it just gives away on me. Right at the end of my back bone I stay sore and hurt and makes me nervous, felt something rubbin' together, you know, just like electricity running through me. Makes me have spells, dark spots out in front of my eyes and then sometimes it just feels like a bright light just glarin' before my eyes up through my spine to my head, got cramps, head hurts all the time. Sometimes my nose bleeds. I can't bend over through my stomach, it hurts through there so bad and stays so

sore * * *. then, my left hip joints, I stay sore in it all the time. Just like somethin' rubbin' or knockin' just like a carbon motor knockin' in there when I walk.

"Q. You actually notice that?

"A. Yes, just when I walk 'ary bit too much, when I just clup, clup, clup right in through my head and it causes me to have pain that hurts to my right leg, right foot cramps cause me to take nervous spells.

"Q. How often do you experience these sensations that you have been mentioning—pain?

"A. I stay in pain all the time. It gets worse. By the time I get up in the morning it'll not be hurtin' as bad * * * only five or ten minutes at a time, a spell a comin' over me. I just fall. I catch hold of somethin' sometimes. I usually can.

"Q. What do you try to do after you got up in the morning and had breakfast? What do you try to do during the day?

"A. Not anything much—just mess around the house with the children—play with them—get up and walk around the house, go out in the garden, walk to the store and back. Doctor told me walk right smart and that might cause that to leave me, not to just sit down in one place and sit there and get worse by doin' that.

"Q. He told you to keep active, didn't he?

"A. Yes, sometimes I just have to stay in bed two or three days and get out, eat, and go back to bed."

Without detailing the medical testimony as to the diagnoses, treatment and condition of the plaintiff following his injury, notwithstanding the testimony of Dr. Karl Baumgeartel, a neurosurgeon of Williamson, West Virginia, who expressed the belief that most of plaintiff's "complaints have a psychoneurotic basis", but expressed the view that conditions existing prior to the accident may have been aggravated by the accident, it seems sufficient to point out the views expressed by other physicians who examined plaintiff, some of whom treated him, as follows:

Dr. Gene T. Watts, who examined plaintiff on the day of his injury and thereafter, filed his medical report on July 28, 1961, in which he said plaintiff "cannot work", and concluded his medical report with the statement "This man is unable to pursue gainful employment to support family".

The testimony of Dr. T. R. Miller, orthopedic surgeon of Lexington, Ky., that plaintiff "probably had a lumbar disc protrusion", which would prevent him from working in coal mines and, in answer to the question "Would the injury to his back alone, the protrusion of the disc, be disabling to such an extent that he could not perform work in the coal mines," stated "I would think so, yes, sir". He further stated that if the injury to back alone remains uncorrected it would permanently disable him from the performance of manual labor.

On May 7, 1962, plaintiff was examined by Dr. Marion G. Brown, an orthopedic surgeon of Lexington, Ky., and in his letter to the Division of Public Assistance with reference to plaintiff, Dr. Brown stated: "It may be that he should have a disc operation. In any event he is *totally disabled now for an indefinite period.*" (Emphasis added).

Dr. Edwin C. Kraft, diagnosed the plaintiff's injury saying that he had "Lumbosacral sprain with possible nerve root irritation"; and in his final report of May 15, 1961, he said: "The above named patient was involved in an accident 11/9/60 and at the present is still unable to work".

Dr. Albert M. Shiflet, an orthopedic surgeon at the Miners Memorial Hospital, in his report dated August 24, 1961, diagnosed plaintiff's injury as "a herniated nucleus pulposis low lumbar". On page 4 of defendant's brief, we are favored with a statement that "herniated nucleus pulposis means protrusion of disc

tissue through the ruptured rim of the disc."

In Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707, 711, the Court said: "* * * we arrive at the conclusion that the mere suggestion of Dr. Roland that hospitalization is recommended for the purpose of performing lumbar myelogram and disc excision, if a disc protrusion is demonstrated in the myelogram, is not substantial evidence to support the conclusion that claimant's impairments were not of sufficient severity to preclude him from engaging in substantial gainful activity." The same conclusion seems to be applicable here.

■■■ The testimony of the above physicians seems amply sufficient to show plaintiff's inability to carry on any longer the work in which he was engaged for most of his adult life. Under such circumstances and conditions, contrary to the views expressed by the Hearing Examiner but according to the authorities hereinafter set out, the law places the burden upon the defendant to show that plaintiff was able to perform some kind of substantial gainful activity which was available to him; and, upon the failure of the defendant to produce evidence upon which appropriate findings in that respect could be made, plaintiff is entitled to prevail on his proofs. Rice v. Celebrezze, 6 Cir., 315 F.2d 7, 17.

■■ The Hearing Examiner made no findings on the issues as to what the plaintiff can do or what employment opportunities are available to a person afflicted as he was, and no evidence to sustain such findings was presented by the defendant. The rule is now thoroughly established by the Court of Appeals of this circuit that without such findings the decision of the Secretary cannot be supported. King v. Flemming, 6 Cir., 289 F.2d 808; Roberson v. Ribicoff, 6 Cir., 299 F.2d 761; Holbrook v. Ribicoff, 6 Cir., 305 F.2d 933; Jarvis v. Ribicoff, supra; Hall v. Celebrezze, 6 Cir., 314 F.2d 686; Jones v. Celebrezze, 6 Cir., 321 F.2d 192.

It is therefore adjudged by the Court that since the defendant did not discharge the burden placed upon him, the decision of the Secretary can not be sustained; that plaintiff's claim is sustained by the evidence, and this case should be reversed and remanded to the Secretary of Health, Education and Welfare with direction that plaintiff be granted a period of disability and disability insurance benefits in accordance with the Social Security Act.

Let an order be entered in conformity herewith.