Joseph N. **CHRISTIE**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare, Defendant.

**Civ. A. No. 4520.**

United States District Court
W. D. Michigan, S. D.

July 10, 1965.

William B. Wreford, Grand Rapids, Mich., for plaintiff.

Harold D. Beaton, U. S. Atty., by Robert G. Quinn, Jr., Asst. U. S. Atty., Grand Rapids, Mich., for defendant.

FOX, District Judge.

This is an action seeking reversal of the determination of the Hearing Examiner of the Department of Health, Education and Welfare on plaintiff's application for disability benefits under the provisions of Title II of the Social Security Act, 42 U.S.C.A. § 401 et seq.

Defendant has moved for a summary judgment in this case.

Plaintiff was born on January 9, 1912. He left grammar school at age sixteen, not having completed even that level of education, and immediately went to work for a short time on a farm. From that time to the time of the accident, he has held a variety of jobs involving manual labor, including bridge construction, plumber's helper, cement finisher for the W.P.A., farmer, and oil field worker.

He had been a worker on drilling rigs from 1943 until the date of the accident here involved, January 7, 1953. At that time he suffered comminuted (shattered) fractures of both heels and a back injury in a fall of twenty to thirty feet. He was hospitalized for some six weeks at that time, and was discharged with both legs in casts, able to walk only with the aid of crutches.

In July of 1953, he was readmitted for further operative procedures on the injury to the left foot, being discharged approximately eight weeks later. In 1955 another hospital stay of four weeks was necessary for a similar operation on the same foot. Evidently at no time since the accident has plaintiff been able to walk without considerable pain, and the aid of a cane. Further, he has no lateral movement whatsoever in his left ankle.

In addition, plaintiff now suffers from pleurisy and arthritis of the back and legs.

In 1958, the medical report of Dr. Jerome, who initially cared for plaintiff, indicated that the patient had been totally disabled since the time of the original injury. (Ex. 15) Dr. Jerome died in January 1961. Plaintiff had been examined by him on the day he died, and that report indicated that no improvement in his condition could be expected.

In 1956 plaintiff was examined by Dr. Durman, who reported that irreversible changes had taken place in the bones and joints of both feet. As to his job qualifications, Dr. Durman said that he *"might* be able to do a sitting job without difficulty, if he has the capabilities otherwise for such a job." (Emphasis supplied.) (Ex. 18, p. 3)

On February 21, 1961, plaintiff was examined by Dr. Koepke, who stated that the condition was probably static, and that no improvement could be expected for an indefinite period. As to restrictions on plaintiff's activity, Dr. Koepke said that he would be unable to work. (Ex. 19)

On August 5, 1961, a Dr. Bruggema referred the patient to the Burns Clinic in Petoskey, Michigan, where an extentive examination was conducted. Findings as a result of that examination were as follows: (1) probable duodenal ulcer; (2) kidney stones; (3) displacement of the lower vertebrae, with accompanying chronic strain of the lumbosacral joint; and (4) arthritis of both ankle regions. The orthopedic expert on the examina-

158

tion, Dr. Mateskon, stated that the ankle conditions were static, and possibly could be improved with proper treatment. However, Dr. Bruggema, in an examination of May 15, 1962, reported that there was no improvement over the condition reported following the complete examination of ten months prior to that time. (Ex. 22)

An examination of June 6, 1962, led Dr. Caukin, an orthopedic surgeon, to venture the opinion that plaintiff could be suffering from traumatic neurosis, and that individuals off from work as long as this plaintiff seldom returned to gainful employment, in his experience. (Ex. 23)

Plaintiff is not able to write well; his wife writes all letters. Apparently he is not proficient to any degree in arithmetical calculations either. (Tr. p. 54)

Every piece of evidence before the Hearing Examiner indicated that plaintiff is a man whose work throughout his life has depended upon his ability to move about and use his physical strength. There can be no question but that he is now incapable of that sort of employment.

The question for the court, then, is whether the plaintiff is capable of performing such other work that he cannot be considered "disabled" within the meaning of the Social Security Act. 20 C.F.R. § 404.1502(b) is an aid in understanding the disability provisions of the act.

" *  *  *

It must be established not only that the individual is incapable of performing his prior, usual or regular work or work commensurate with his education, training, experience, and skills (i. e., equal to his previous type of work in amount of earnings or utilization of capacities) but also that he does not have the capacity to engage in any other kind of substantial gainful work, taking into account his age, education, experience and skills."

Case law has followed in the same direction.

" *  *  * [T]he Act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has." (Quoted from Klimaszewski v. Flemming, D.C., 176 F.Supp. 927, at 931, 932, by Randall v. Flemming, 192 F.Supp. 111 (D.C.) (W.D. Mich.1961.)

Plaintiff in this case is an uneducated, semi-literate manual laborer fifty-three years of age. The realities of contemporary employment practices must be contemplated in enforcing the Act. It is the contention of defendant that plaintiff is capable of substantial, gainful employment, yet he does not adduce a single example of the type of employment available to a man in plaintiff's position. Defendant apparently relies upon Dr. Durman's statement that plaintiff could possibly do work which required him only to sit. If this is the basis for a judgment that a man is capable of substantial employment, it is difficult to conceive of the situation in which a man would be disabled, in the mind of the Secretary. A man confined to bed could possibly do work which required him only to move his hands, or to read, or to lick postage stamps. Yet, these are creations of the Secretary—such jobs simply do not exist to any meaningful extent in a mechanized society.

The Sixth Circuit Court of Appeals, in Jones v. Celebrezze, 321 F.2d 192 (1963), must certainly have had this in mind when it quoted Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527:

" *  *  * it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of

work any longer, and, of his lack of particular experience for any other type of job. *If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type work; actually, not apparently.* Jones v. Celebrezze, supra, 321 F.2d at 198.

Defendant has not brought forth any evidence of actual ability to do work of any kind. As the proofs now stand, nearly every medical report on the plaintiff indicates clearly, in one way or another, that his condition is permanent and that he is unable to engage in substantial, gainful activity.

"The determinative factor is not how substantial the gain, but how substantial the activity, in which the claimant can be gainfully engaged. * * * The writer of this opinion cannot think of any type of substantial gainful activity in which appellant could engage. If he could wash the dishes in the home or perform any similar light duties, that would not constitute substantial gainful activity. With only a fifth-grade education, his sole experience has been farming and working in heavy industry, and it is admitted that he cannot now engage in that kind of activity." Jarvis v. Ribicoff, 312 F. 2d 707, 710 (CCA 6, 1963) (McAllister, J.)

That Court went on to find that the claimant was entitled to disability benefits in the face of the hearing examiner's finding that:

[Claimant's] "ability to get about has been impaired; that he is subject to much pain and discomfort; that his impairment restricts the normal functions as to bodily movement; and that it would interfere with respect to any type of employment unless the duties involved were of a very light and sedentary nature, * * *."

■■ A claimant for disability benefits sustains his burden of proof under the Act when he submits evidence showing his physical disabilities, education, experience and inability to engage in substantial gainful activity in the future. King v. Celebrezze, D.C., 223 F.Supp. 457, 465. And a general finding by the hearing examiner that the claimant can be substantially and gainfully employed, without any specific finding of what he can do and what opportunities are open to him, cannot support a denial of disability benefits. Patterson v. Celebrezze, D.C., 226 F.Supp. 747, 750, and authorities cited there. See also Mullins v. Celebrezze, D.C., 227 F.Supp. 756, and Williams v. Celebrezze, D.C., 228 F.Supp. 627.

42 U.S.C.A. § 405(g) states:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

■ Taking into consideration this claimant's age, education, experience and skills, the medical reports in evidence, the transcript of the hearing and the hearing examiner's report, there is not substantial evidence to warrant a finding that the applicant is capable of carrying on substantial and gainful activity; indeed, the evidence leads to the opposite conclusion.

The decision of the Secretary is therefore reversed; the claimant is entitled to disability benefits.